24-2705 Western Missouri Auto-Owners Mutual Insurance Company v. Beverly Granger Mr. Rogers, when you're ready. Thank you, Your Honor. May it please the Court. And good morning. I'm Len Rogers. I represent the appellant, Beverly Granger, in this case. UIM cases, underinsured motorist cases, have kind of had a long and tortured history in Missouri law, primarily based on whether they were stackable and or whether they're excess coverage. And that was a huge battle for a long time. But that finally got resolved by the Supreme Court, and the policies all got changed to include this one that has specific language. It says, no, there's no chance in the world that we'll ever actually pay $250,000, despite what it says in the debt page. However, that's not the issue here, of course. Here, we're dealing with an ambiguity. I think, first of all, an ambiguity, at least an ambiguity. I think it's probably very clear that Ms. Granger is entitled to coverage under the policy. But most importantly, and the first thing I'd like to address, is the fact that this district court's judgment has to be reversed, because it was based almost exclusively on a definition that wasn't the actual definition that was in the policy. The court found the language of the policy to be confusing, but nonetheless found that the unambiguous definition of you and your somehow justified summary judgment in favor of auto owners, except that wasn't the definition. Well, let me ask you this. This is not the most well-written policy, but the word you appears twice in that provision that we're talking about. It says, you are legally entitled to recover from the owner or operator of any underinsured automobile for bodily injury you sustain. And although the district court didn't really focus on it, I wonder whether they've now tied the word you to the injury and the recovery. And I'll tell you why that's important. The person who needs to be injured needs to be the one recovering. Now, you can argue that's not the only interpretation, but I do want you to answer that, because that's a variation, I think, of what the district court was doing. Yes, Your Honor, and I think the answer is that actually the you, as it relates to the personal injury, is obviously going to be the – it's almost like a schizophrenic you. And the you that can recover for personal injury is the one who is actually injured in the collision, which in this case was Mr. Granger, Randy Granger. However, it does say, though, that you can recover damages including, and not limited to, loss of consortium. And the only you, as defined in the policy and as stated on the deck page, that could possibly have had a loss of consortium claim is Mrs. Granger. And the deck page – and there's the biggest issue with the use of the wrong definition. Because the court opined that, yeah, this – it probably would be – I forget the term the court used, but compelling, maybe dispositive, if it had been – if the definition that had said – or if they had more than one named insured, but the definition he was operating under only really talked about one insured. And if that insured was married, then the spouse – and living in the same household – the spouse becomes sort of an additional insured. That's not what we have here. Suppose – I agree with you. You have absolutely spotted the strongest argument the other way, the loss of consortium, because we're usually talking about that in the sense of the spouse who wasn't insured. I mean, if you look it up, that's the definition, I think, in Blacks and some other places. But suppose that wasn't there. Would this be a different case? And I know we're talking about a hypothetical where you have the same language, but loss of consortium just doesn't appear. That including clause is gone. Well, I don't actually know the answer, Your Honor. It's an interesting question, for sure. But I really – if you deleted that, then it would change – I think it might very well change the outcome. But, of course, you can't delete it because it's in there. I was just curious how much work that was doing. I was getting at how much work the loss of consortium was doing. But I think that given the fact that the court focused its – the district court focused its decision on an inaccurate definition, I don't think there's anything that can be done other than it needs to be reversed. But when it gets reversed, I think it needs to be reversed with direction to grant judgment – grant the motion for summary judgment filed by the appellant, Mrs. Granger, for all the reasons that I set forth in the brief. You know, it's very clear that in Missouri law – I mean, we don't disagree. We a lot of times cite the same cases. It's very clear that the policy will be written – or enforced as written unless it's ambiguous. Well, I take the position, obviously, that it is clear that the U that relates to Mrs. Granger can recover loss of consortium resulting from the injury to the U that in that instance is Mr. Granger, and therefore it's clear that she's entitled to recover. But even if it's not, then it's at the very least ambiguous. And we all know what the result is when there's an ambiguity in the policy. It's always going to be construed against the company. The company is the one who chose the policy language. The company is the one who decided to – and then did issue the policy naming two separate named insureds. In fact, I'm not sure that – well, hypothetically, you know, you might actually have four insureds on this policy because the first named insured, Mr. Granger, and his spouse, Mrs. Granger, and then the second named insured, Mrs. Granger, and her spouse. I'm not making that argument here today, but it's kind of an interesting thought. But it is, at the very minimum, this policy is ambiguous. In – under Missouri law, and I know different states are different on this, do you look at outside evidence of intent, parole evidence, used canons, or is it – in other words, is construing against the insurer a first-line canon, do you directly go to that, or do you look at other canons first in trying to interpret the policy? I believe that it goes directly to that, Your Honor. If it's ambiguous, they lose. It's as simple as that. They've got to choose the language, they've got to write it in a method that will be interpreted by – objectively interpreted and understood by ordinary people of ordinary understanding. You don't have to be a lawyer. It's up to them. They get the chance to write the policy, and they have to live with whatever they wrote. And that is, Your Honor, is what I think they've done in this case. And I understand that that is a common belief amongst lawyers pretty much everywhere, that the first order of construction is ambiguity. You get there first. But that is not, in fact, the law in many states. And so I'm curious about your answer to Judge Strasse's particular question. Do you know whether or not the Missouri Supreme Court has said that the first order of construction is, in fact, the – that you go to the ambiguity first? Do you know? Well, I'm not completely sure that I understood the question that way or understand the question that way. The ultimate result, if the policy is found to be ambiguous – Yeah. The question is, if you apply the ordinary rules of contract construction and you go through the rules of grammar and it clears up the ambiguity, do you do that process first? Like, do we take out, like, Brian Garner's book and start working through the maxims first to resolve that ambiguity? Do we do that under Missouri law, or do we just say, hold on, wait a minute, it's on its face, ambiguous, and the first order of construction is, in fact, is it plain? Well, I think that – I think that the first order is, is it plain? Because there are cases that say the policy will be written – will be enforced as written unless it's ambiguous. And then you look to see, well, is it ambiguous, and if so, why? And I think that's where we are here. I mean, it is ambiguous. See, you cannot really enforce it as written. First of all, district court, as I've noted, didn't enforce it as written. But even if you did, it's a very – it's either, in my belief, it's either clear that we, Mrs. Granger, is entitled to recover that separate, because you start – the cases are very clear in interpreting a policy. You start with a deck page, and you work from there backward. That's the Wasson case that I cited in my – in my brief. And so you start with a deck page, and what does it tell you? Well, it tells you that Beverly Granger's the name insured, and she's got UIM coverage. How much does she have? $250,000 for each person. She's one person. So, you know, to me, that's perfectly clear that she is absolutely entitled directly. But if there is an ambiguity in the policy, she's still going to win. And I think there is at least an ambiguity in the policy. And I don't mean to belabor the issue, but I would point out that there are a number of cases that got cited in the appellee's brief that really don't have too much to do with anything. They talk about the – I think it was the – I can't even read my own writing – did against Schultz case, which was a homeowner's case dealing a fire claim. There was the owners against Craig case, which they touted as the controlling case, but the district court correctly understood that that had nothing to do with anything. The Floyd against Tunnell case, it was a UM, uninsured motorist, not UIM case. The Lewis against State Farm case, that's where the claimant – so the injured party – not the injured party, the loss of consortium party settled the case for less than the policy limits. And so there's a number of discrepancies. I see that my time that I was going to reserve for rebuttal is rapidly expiring. So unless the court has a question, I think I shall reserve my comments for the remainder. Thank you, Mr. Rogers. Thank you, Your Honor. Ms. Lesico? Good morning. May it please the Court. Your Honors, this policy is not ambiguous. It is clearly unambiguous. The declarations are where we begin. They provide $250,000 of underinsured motorist coverage, which is exactly what the Grangers have received from auto owners based on this injury. But it says per person, $250,000, and my understanding of the declarations is $500,000 per occurrence. So if there's two people that have injuries from the occurrence, then… But there were not two people who had injuries from the occurrence based on the plain language of the policy. The only person who had injuries from the occurrence was Randy Granger, bodily injury from the occurrence. The bodily injury definition in the policy requires a physical injury. So the loss of consortium is not a bodily injury. Compensation for a bodily injury may include loss of consortium, but the loss of consortium is not the bodily injury. I think I know your answer to this because I've thought through this, too. But loss of consortium, that's the best argument going the other way. How would you recover for loss of consortium if it's not the… It's usually the other person, the other spouse. Maybe the person's injured, maybe they're not. But that's the loss of consortium. And so how would the other spouse recover the loss of consortium damages otherwise? So here, when would loss of consortium come up here? So Ms. Granger, Mrs. Granger would have recovered her loss of consortium damages had the bodily injury damages been less than the limit. And so the only time in which the policy is not ethereal is when the person who has suffered the primary bodily injury is not entitled to the limit's coverage. Otherwise, the policy is ethereal. It's not ethereal. You get the coverage. But the max limit is the limit of coverage. And in this case, I don't even think it covered all of Mr. Granger's bodily injury. It just was not enough. Unfortunately, his injuries were catastrophic. And so, as I understand it, and so the 250 limit is the 250 limit. That's the only person who gets… I mean, that's the only… It's each person occurrence. There was one bodily injury. Unfortunately, there just wasn't enough left in the policy for any additional money. That was not the answer I was expecting. But suppose then, you've now raised a hypothetical that I think will be very difficult to answer, which is, suppose they're both in the car. One's wearing a seatbelt and one's not. The one not wearing a seatbelt suffers catastrophic injuries. The one who is wearing a seatbelt, not a scratch. Both in the car accident, can the spouse who is not the one who suffered the… who was without a scratch, can that person suffer… can that spouse recover loss of consortium? No injuries. No injuries at all. But in the car, subject to the accident. Well, let me reread the policy just one more time. No injuries at all. I don't think they can receive the loss of consortium up to the limit of the individual who was injured because there's still only one bodily injury. The bodily injury is required by the policy language. If you take it… But if she suffers a minor whiplash injury that is temporary in nature, recovers in three months, then she should be able to make her claim. She'd be able to make a bodily injury claim. And then if there is loss of consortium, it would be up to the limit then. And if they were both in the car… So any claim for pain or suffering, no matter how minor, would open up the… A little scratch, yeah. According to the policy language, there has to be a bodily injury. If there's a bodily injury, if that's enough to be considered a bodily injury under the policy language, then yes. But if there's absolutely no injury, or in this case, not even in the car, no injury, the policy language does not provide for an individual claim. Bodily injury is so broadly defined. It says, quote-unquote, any physical injury, sickness, or disease sustained. Yes, but it has to be a physical injury. So it can't be, you know, I was standing there and saw this accident happen, and now I have PTSD or something. In this policy, there's required to be a physical injury. So a scratch, likely a physical injury, nothing at all, you know. I mean, it seems like that would be a rare occurrence if somebody… If they're both in the car and somebody's so severely injured, but the other person didn't get a scratch. But, you know, could happen, I suppose. Yeah, and the other answer, you know, this is the one I thought you were going to give, was if they're both injured, they could both, like in the car, they could both receive loss of consortium from the other, right? So if they, let's say one's $100,000, one's $50,000 in damages, they still have $150,000 and $200,000 respectively. So your argument going the other way would be, I think, and maybe you make this argument somewhere, I didn't see it, but it's not superfluous. Because it would still apply when they're both in the car and injured. If they're both injured and… Yes, they would both potentially have a loss of consortium claim. Because the claim, the loss of consortium claim is the derivative claim of the bodily injury claim. It's the bodily injury is required. If you have that, then there's a potential for a loss of consortium if you qualify. And in this case, no bodily injury by Mrs. Granger. So her loss of consortium claim was derivative to Mr. Granger's. Unfortunately, it was far beyond the limit, the $250,000 limit, which auto owners did pay the full amount. So the idea that it wasn't going to pay what the declarations required is just false. It paid the full amount. That was all that the policy required. The only way you get to the answer that Mr. Rogers is seeking is if you insert an or somewhere that's not in the policy. You have to make you be Mr. or Mrs. Granger. But it's not. It's and. They're together. They're a unit. There has to be that bodily injury if you're going to say, well, let me back up. If you're going to say that Mrs. Granger has a separate loss of consortium claim on her own, she does not because there's a requirement of bodily injury. She didn't have a bodily injury. But what it seems like the argument is, is that if you replace the you in the policy language with when Mrs. Granger was not occupying an automobile, but Mr. Granger was injured, but there's no or. You can't separate them in that way and put one in each place. The you is the named insured or because their spouses, the named insured and their spouse that they live with. So it's Mr. Granger's bodily injury claim, which would potentially include Mrs. Granger's loss of consortium claim. Or it's Mr. Granger and Mrs. Granger's bodily injury claim because they're the unit, which would then also include Mr. and Mrs. Granger's loss of consortium claim. Because there's one bodily injury here. That's all there is. It ties together in the policy language. It's very clear. And it has to be the answer here. If there were two bodily injuries and Mrs. Granger had been in a car and suffered a mere scratch, would her loss of consortium claim as an independent claim, as opposed to the derivative claim from Mr. Granger's coverage, would she be limited to the loss of consortium that was caused by her scratch? Would be absolutely by definition none, right? Would that be your argument then? I think that would be dependent on what, you know, the findings of what the facts are. Say the facts are exactly what they are here. So you've exhausted the policy limits on Mr. Granger's claim. And then you've got Mrs. Granger's derivative claim. And she's got her own independent claim because she suffered, and then we changed the facts slightly, she suffered a slight injury. Have we exhausted all those benefits that arise out of Mr. Granger's claim? Mr. Granger's loss, such that that extra $250,000 is opened up because of her independent injury, but limited to the loss of consortium caused by her own injury, not the injury to Mr. Granger. Well, I think in this case it may qualify them for the occurrence amount, because it would be not just each, the each person. But I'm not sure. I'd have to look at the facts of what would happen in that situation and what, you know, what damages they were claiming. So I think we don't have that here. We don't have any injury. And so it's hard to say, you know, what the answer would have been had she been in the car and had a scratch. She wasn't in the car. She was nowhere near the accident. She did not suffer any bodily injury. And if you read the policy language, the plain language of the policy, that's the answer. There has to be a bodily injury. The loss of consortium language in there is simply stating that compensation for bodily injury may include loss of consortium damages. It's not saying that that's a separate claim that doesn't involve the bodily injury. So what does adding the spouse as a named insurance, as a named insured, what does that add to the insurance policy? Right? I mean, because if you're saying you means the named insured plus the spouse, but you add as an insured driver, the spouse, what does that add to the policy? Well, it depends on which policy provisions in this UIM policy, in the context of what we're talking about. I mean, she would have a separate claim for her bodily injury. But loss of consortium is still derivative. You know, it's not a separate thing. So she is a named insured, and there may be provisions in the policy that apply only to a named insured. It's probably more relevant if the named insured is a child or someone else and not the spouse because of the definition of you. But there may be other provisions in the policy, not in the UIM provision, that relies solely on named insured instead of you. Or provides different coverage for a named insured than it would just the spouse. I think there are cases, both in Missouri and lots of other states, talking about the classifications of insureds, whether you're the named insured or whether you're an additional insured or, you know. And so in this particular part of the policy, it doesn't seem like it makes a huge difference. But, you know, the policy is long, and we're not discussing sort of those other provisions right now. I think that you have to read the entire policy here. And the purpose of the underinsured motorist coverage is to provide that gap coverage. It's not to provide excess coverage. The courts have upheld that underinsured is not required. So it can do that. You have to focus on the policy language. And the policy language here just simply does not provide that separate claim for Mrs. Granger. Can I ask just about the potential failure to exhaust? My understanding is there's an exhaust requirement. I think you make that argument. I just, I mean, give opposing counsel certainly a chance to answer that as well, time permitting. But could you just address that for me? Sure. That's our alternative argument. That we, our argument is that she does not have this separate claim for her loss of consortium because there's no bodily injury. But if this court were to find that she does have such a claim, our alternative argument is that she did not ask the tortfeasor, the actual underinsured driver, to cover a claim for loss of consortium. The only claim that was made was the bodily injury claim. And so without making such a claim to the underinsured driver, she cannot now make a separate claim here because they would be then separate claims. So the reason why I'm asking the question is because you're arguing that it's derivative, that the claim is derivative. If it's derivative, that naturally leads to the argument of the opposing side to say, we exhaust it because it's derivative of the claim we brought. Right. It's an alternative argument if this court would find that it was not derivative. But our argument is that it is absolutely derivative and that it does not, it is not a part of the bodily injury coverage provided by the each person limit. I see. There are no further questions. Then we would ask that this court affirm the district court's grant of summary judgment in auto owner's favor. Thank you, Ms. Luceko. Thank you. Mr. Rogers, when you're ready. Thank you, Your Honor. Got four and a half minutes left. I tend to use them. I wanted to point out, I guess going kind of in reverse order, the question regarding the failure of the argued, I'm not going to say alleged, argued failure to submit the claim to the tortfeasor that UM claimed, which is admittedly a derivative claim. There's no doubt about it. But the thing is, they've stipulated that, well, first of all, that kind of conflates the coverages available for liability coverage of the tortfeasor. Unquestionably, under Missouri law, the policies are all written such that the tortfeasor's coverage includes all claims, both bodily injury of one spouse and the derivative claim for loss of consortium. Here, we don't really have to worry about that because there's been a stipulation that, well, first of all, it's a different coverage. The parties, though, have stipulated that the coverage was exhausted. I'm told Mr. Ranger's medical expenses alone exceeded a million dollars. It was a truly horrific accident. But clearly, the $25,000 policy is gone, and there really is no point. The law will not require the parties to engage in futile gestures. But even if that weren't the case, she could always do so. The statute of limitations still hasn't run on that claim. She could always formally tender her loss of consortium claim, and they could say, sorry, we've already spent all of our $25,000, and we'd be right back where we are today. Why shouldn't we require that here? I mean, it may be a futile gesture, but the fact of the matter is, is there is no mention, from my understanding of the record, there's no mention of loss of consortium at all in terms of either the tortfeasor or the tortfeasor's insurer. That is correct. The settlement was with, I think that's correct. The settlement was made with Mr. Granger. Mrs. Granger never signed a release. He signed a release only for his personal injuries that he sustained. The loss of consortium claim is still out there. It was never addressed. But it's clear that all of her coverage arising out of the injury of one person, that is Mr. Granger, when I say her, I should have said the tortfeasor's coverage for all of the claims arising out of the injury to Mr. Granger have already been exhausted. There's no more money left. But what we have here is we've got a deck page that shows Mrs. Granger is a named insured. We've got a policy that says, and I would direct the court or might suggest to the court, in the district court's opinion, I want to say this before I run out of time, on page seven, the court kind of suggests the way it thinks the thing ought to be read. And it inserts the names as it thought it should be. And it inserts both names in both places. It says, we shall pay compensatory damages including, but not limited to, including loss of consortium and it put in Randy Granger are legally entitled to recover from the owner or operator of the underinsured motor vehicle for bodily injury to Randy and Beverly Granger. Well, that doesn't follow. That just doesn't make any sense. I suggest that it's more accurate to look at the alternative language that I propose in my brief at page 14. The way you, the only way, since there is no loss of consortium claim of Mr. Granger and there is no bodily injury claim of Mrs. Granger, it's got to be read that we will pay compensatory damages including loss of consortium that you, Beverly Granger, are legally entitled to recover from the torque feeser by reason of any bodily injury that you, Randy Granger, sustained. And that's where we are. The deck page says she's covered. It says how much she's covered for. It says what the separate limits are. She's a separate claimant. The court, regrettably, did not rely on the correct definition of you. And I think the court, frankly, misconstrued that language I just mentioned. I think the court misconstrued how the language goes together. And for that reason, Your Honors, I do request that this court reverse the trial, the district court, and direct the district court to enter summary judgment on Beverly Granger's motion for summary judgment. Thank you very much. Thank you, Mr. Rogers. The case was well presented. And the court will take it under advisement and rule in due course.